MICHAEL BARNES (State Bar No. 121314)
CYNTHIA LIU (State Bar No. 263270)
DENTONS US LLP
525 Market Street, 26th Floor
San Francisco, California  94105-2708
Telephone:   (415) 882-5000
Facsimile:    (415) 882-0300
Email:        michael.barnes@dentons.com
              cynthia.liu@dentons.com

Attorneys for Defendant
ALLSTATE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNY K. DANIELS and MARK M. DANIELS,<br><br>          Plaintiffs,<br><br>   vs.<br><br>ALLSTATE INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 25, inclusive,<br><br>        Defendants. | No.  5:14-cv-00824-PSG<br><br>DEFENDANT ALLSTATE INSURANCE COMPANY'S:<br><br>(1) NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM [F.R.C.P. 12(B)(6)];<br><br>(2) NOTICE OF MOTION AND MOTION TO STRIKE [F.R.C.P 12(F)]; AND<br><br>(3) SUPPORTING MEMORANDUM OF POINT AND AUTHORITIES<br><br>Date:   April 8, 2014<br>Time:   10:00 a.m.<br>Place:   Courtroom 5 [San Jose]<br>Before:  Magistrate Paul Singh Grewal |

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

## NOTICE OF MOTIONS

TO PLAINTIFFS, THEIR ATTORNEYS, AND THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that, on April 8, 2014, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 5, of the United States District Court for the Northern District of California, located at 280 S. First Street, San Jose, California, defendant Allstate Insurance Company will move, and hereby does, move for an order:

(1)    Dismissing all claims for relief in the complaint for failure to state a cognizable claim under Federal Rule of Civil Procedure 12(b)(6); and

(2)    Striking from the complaint the request for punitive damages pursuant to Federal Rule of Civil Procedure 12(f).

Allstate bases its motions upon this notice, the following memorandum of points and authorities, the concurrently-filed request for judicial notice, the complete files and records of this action, any oral argument the Court permits, and any further information that may properly be presented to the Court for consideration at the hearing.

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

ALLSTATE'S MOTION TO DISMISS
AND MOTION TO STRIKE

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL ALLEGATIONS ................................................................................ 1

    A.    The Underlying Action ............................................................................. 1

    B.    The Allstate Policy .................................................................................... 2

III.  LEGAL STANDARD ........................................................................................... 3

    A.    FRCP 12(b)(6) .......................................................................................... 3

    B.    FRCP 12(f) ............................................................................................... 4

    C.    FRCP 8 ...................................................................................................... 4

IV.   ARGUMENT ........................................................................................................ 5

    A.    The Complaint Fails to State A Claim For Breach Of Contract ............... 5

        1.    The Underlying Complaint Pled No "Accident" .......................... 6

            a)    The Retaining Wall's Condition Was No "Accident" ...... 7

            b)    The Decision To Disregard The Wall's Condition Was No  Accident, Either ........................................... 8

        2.    The Kennedys Sought No Damages For "Bodily Injury" Or "Property Damage" As Defined in the Allstate Policy ........................ 11

    B.    Allstate Did Not Act In "Bad Faith" ...................................................... 13

        1.    Allstate Cannot Have Bad Faith Liability Because No Coverage Was Available ........................................................ 13

        2.    Allstate's Denial Of Coverage Was Reasonable ..................................... 14

    C.    The Court Should Strike The Danielses' Request For Punitive Damages ......... 15

V.    CONCLUSION .................................................................................................. 16

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

## **TABLE OF AUTHORITIES**

**CASES**

*Aim Ins. Co. v. Culcasi*,
    229 Cal. App. 3d 209 (1991) ..................................................................13

*Albrecht v. Lund*,
    845 F.2d 193 (9th Cir. 1988) ...................................................................4

*Allstate Ins. Co. v. Chaney*,
    804 F. Supp. 1219 (N.D. Cal. 1992) ........................................................12

*Allstate Ins. Co. v. LaPore*,
    762 F. Supp. 268 (N.D. Cal. 1991) ..........................................................13

*Allstate Ins. Co. v. Morgan*,
    806 F. Supp. 1460 (N.D. Cal. 1992) .........................................................8

*Allstate Ins. Co. v. Tankovich*,
    776 F. Supp. 1394 (N.D. Cal. 1991) ........................................................10

*Am. Guar. and Liability Ins. Co. v. Vista Medical Supply*,
    699 F. Supp. 787 (N.D. Cal. 1988) ..........................................................10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .........................................................................4, 10

*Atiyeh v. Nat. Fire Ins. Co. Of Hartford*,
    742 F. Supp. 2d 591 (E.D. Pa. 2010) .........................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................4, 10

*BJC Health System v. Columbia Cas. Co.*,
    478 F.3d 908 (8th Cir. 2007) ...................................................................4

*Borg v. Transamerica Ins. Co.*,
    47 Cal. App. 4th 448 (1996) ...................................................................11

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,
    971 F.2d 272 (9th Cir. 1992) ...................................................................15

*C & H Foods Co. v. Hartford Ins. Co.*,
    163 Cal. App. 3d 1055 (1984) .................................................................16

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ......................................................................3

*California Ins. Guar. Ass'n v. Wood*,
   217 Cal. App. 3d 944 (1990) ............................................................................. 9

*Chateau Chamberay Homeowners Ass'n. v. Associated Int'l Ins. Co.*,
   90 Cal. App. 4th 335 (2001) ............................................................................ 14

*Chatton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   10 Cal. App. 4th 846 (1992) ............................................................................ 13

*Citing Hibbets v. Lexington Ins. Co.*,
   377 Fed. Appx. 352 (5th Cir. 2010) .................................................................. 5

*City of Laguna Beach v. Mead Reins. Corp.*,
   226 Cal. App. 3d 822 (1990) ........................................................................... 12

*Collin v. Am. Empire Ins. Co.*,
   21 Cal. App. 4th 787 (1994) ............................................................................. 6

*Delgado v. Interinsurance Exchange of Automobile Club of Southern California*,
   47 Cal. 4th 302 (2009) ...................................................................................... 6

*Feldman v. Allstate Ins. Co.*,
   322 F.3d 660 (9th Cir. 2003) .......................................................................... 15

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*,
   16 Cal. App. 4th 492 (1993) ............................................................................. 8

*Franceschi v. Am. Motorists Ins. Co.*,
   852 F.2d 1217 (9th Cir. 1988) ........................................................................ 14

*Geddes & Smith v. St. Paul Mercury Indemnity Co.*,
   51 Cal. 2d 558 (1959) ................................................................................... 6, 7

*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*,
   148 Cal. App. 4th 976 (2007) ........................................................................... 7

*Gravillis v. Coldwell Banker Residential Brokerage Co.*,
   143 Cal. App. 4th 761 (2006) ......................................................................... 13

*Gray v. Zurich Ins. Co.*,
   65 Cal. 2d 263 (1966) ................................................................................... 5, 6

*Guebara v. Allstate Ins. Co.*,
   237 F.3d 987 (9th Cir. 2001) .......................................................................... 15

*Gunderson v. Fire Ins. Exch.*,
   37 Cal. App. 4th 1106 (1995) ................................................................. 6, 11, 12

*Hendrickson v. Zurich American Ins. Co. of Illinois*,
   72 Cal. App. 4th 1084 (1999) ......................................................................... 11

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

*Hogan v. Midland Nat. Ins. Co.*,
    3 Cal. 3d 553 (1970) ................................................................................6, 9

*Kazi v. State Farm Fire & Cas. Co.*,
    24 Cal. 4th 871 (2001) ...................................................................................12

*Khatchatrian v. Continental Cas. Co.*,
    332 F.3d 1227 (9th Cir. 2003) ...........................................................................7

*Lipson v. Jordache Enterprises, Inc.*,
    9 Cal. App. 4th 151 (1992) ...............................................................................8

*Love v. Fire Ins. Exch.*,
    221 Cal. App. 3d 1136 (1990) ....................................................................13, 14

*Luna v. Nationwide Prop. And Cas. Ins. Co.*,
    798 F. Supp. 2d 821 (S.D. Tex. 2011) .................................................................5

*Lunsford v. American Guar. & Liab. Ins. Co.*,
    18 F.3d 653 (9th Cir. 1994) ..............................................................................15

*Merced Mut. Ins. Co. v. Mendez*,
    213 Cal. App. 3d 41 (1989) .............................................................................10

*Mercury Cas. Co. v. Superior Court*,
    179 Cal. App. 3d 1027 (1986) ............................................................................5

*Montrose Chem. Corp. v. Superior Court*,
    6 Cal. 4th 287 (1993) .......................................................................................6

*Nichols v. Great Am. Ins. Co.*,
    169 Cal. App. 766 (1985) ..................................................................................9

*North America Building Maintenance, Inc. v. Fireman's Fund Insurance Co.*,
    137 Cal. App. 4th 627 (2006) ............................................................................9

*O'Keefe v. Allstate Indem. Co.*,
    953 F. Supp. 2d 1111 (S.D. Cal. 2013) ................................................................3

*Old Republic Ins. Co. v. Superior Court*,
    66 Cal. App. 4th 128 (1998) ............................................................................12

*Olympic Club v. Those Underwriters at Lloyd's, London*,
    991 F.2d 497 (9th Cir. 1993) .............................................................................6

*Pruco Life Ins. Co. v. Martin*,
    2011 WL 3627282 (D. Nev. Aug. 16, 2011) ........................................................4

*Rappaport-Scott v. Interinsurance Exchange of the Auto. Club*,
    146 Cal. App. 4th 831 (2007) ..........................................................................14

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

*Ray v. Valley Forge Ins. Co.*,
    77 Cal. App. 4th 1039 (1999) .................................................................8, 10

*Royal Globe Ins. Co. v. Whitaker*,
    181 Cal. App. 3d 532 (1986) .........................................................................8

*Safeco Ins. Co. of America v. Guyton*,
    692 F.2d 551 (9th Cir. 1982) .......................................................................14

*Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    64 F.3d 1282 (9th Cir. 1995) .........................................................................4

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
    12 Cal. App. 4th 715 (1993) ........................................................................12

*Silberg v. California Life Ins. Co.*,
    11 Cal. 3d 452 (1974) ..................................................................................16

*Slottow v. American Cas. Co. of Reading, PA*,
    10 F.3d 1355 (9th Cir. 1993) .......................................................................16

*Smith v. Superior Court*,
    10 Cal. App. 4th 1033 (1992) ..................................................................5, 16

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2000) .........................................................................3

*State Farm Fire & Cas. Co. v. Drasin*,
    152 Cal. App. 3d 864 (1984) .........................................................................6

*Swain v. Cal. Cas. Ins. Co.*,
    99 Cal. App. 4th 1 (2002) ............................................................................10

*Taub v. First State Ins. Co.*,
    44 Cal. App. 4th 811 (1995) ..........................................................................9

*Tomaselli v. Transamerica Ins. Co.*,
    25 Cal. App. 4th 1269 (1994) ......................................................................16

*Venoco, Inc. v. Gulf Underwriters Ins. Co.*,
    175 Cal. App. 4th 750 (2009) .........................................................................9

*Waller v. Truck Ins. Exch.*,
    11 Cal. 4th 1 (1995) ..........................................................................6, 13, 14

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) .......................................................................3

*Western World Ins. Co. v. Dana*,
    765 F. Supp. 1011 (E.D. Cal. 1991) ............................................................12

DENTONS US LLP
525 MARKET STREET, 26ᵀᴴ FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ................................................................................4

*Wilson v. 21st Century Ins. Co.*,
   42 Cal. 4th 713 (2007) ..........................................................................................14

**STATUTES**

Calalifornia Civil Code § 3294 ...............................................................................15

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ....................................................................4, 5, 10

Federal Rule of Civil Procedure 12(b)(6) ................................................................3

Federal Rule of Civil Procedure 12(f) .....................................................................4

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By their complaint in this action, plaintiffs contend Allstate wrongfully failed to defend and indemnify them under a homeowners policy in a suit by their neighbors.  The neighbors had sued the Danielses' for refusing to repair a 20-year-old retaining wall that was in danger of failing.

Allstate properly denied coverage for the prior action because (1) the underlying suit alleged no "accidental" conduct, and (2) the underlying plaintiffs sought no damages for "**bodily injury**" or "**property damage**" as defined in the Danielses' policy.  To the contrary, the Danielses' refusal to maintain their property was no "accident," and the underlying plaintiffs' fear of the retaining wall's collapse was not a physical injury to them or their property.

The absence of coverage for the underlying action is established by the documents attached to the complaint and subject to judicial notice, and is dispositive of plaintiffs' contract and tort claims.  As a result, the complaint should be dismissed without leave to amend.

## II.   FACTUAL ALLEGATIONS

By their complaint, plaintiffs contend Allstate wrongfully denied liability coverage for an underlying lawsuit in state court.  As a result, the material facts – all of which are in the pleadings or judicially-noticeable – are the underlying allegations and the policy language.

### A.    The Underlying Action

On February 15, 2013, Joyce and Edward Kennedy commenced a lawsuit against Jenny and Mark Daniels captioned *Kennedy v. Daniels*, Santa Cruz Superior Court, case number CV 176241 (the "Underlying Action").  (Cmplt., Ex. B.)  The Kennedys and the Danielses were neighbors in Santa Cruz County, whose properties adjoined.  (*Id.*, ¶¶ 1-2, 6.)

The dispute in the Underlying Action arose from a retaining wall at the back of the Danielses' property, which the Kennedys were afraid would fail.  (Cmplt., Ex. B, ¶¶ 8-18.)  According to the underlying complaint, the wall retained a substantial amount of soil fill and, if it "fail[ed] due to its poor construction, age and/or damage caused by tree roots, it *would* cause a landslide that *would* inundate the Kennedy's [sic] property with fill soil."  (*Id.*, ¶ 11) (emphasis

added).  Additionally, two trees and a tree stump embedded in the retained fill were allegedly in danger of falling onto the Kennedys' property if the wall failed.  (*Id.*, ¶ 8-18.)

The Kennedys contended that, in 2012, they attempted to work with the Danielses "to find a solution to the unreasonable risk created by the failing retaining wall and the adjacent trees," but the Danielses "refused to take any action to remedy the man-made and natural hazards on their property."  (*Id.*, ¶ 18.)  At trial in the Underlying Action, "Mr. Daniels testified that his dislike of the Kennedys and their approach was the primary reason he refused to engage with them in any meaningful conversation about their concerns."  (RFJN, Ex. A, 6:4-6.)

Based on those allegations, the Kennedys sought damages for nuisance, a declaration that the retaining wall constituted an ongoing nuisance, and an injunction requiring the Danielses to replace the wall and remove the trees.  (Cmplt., Ex. B., Prayer.)

The trial in the Underlying Action was held on October 15-17, 2013.  (RFJN, Ex. A, 2:1-3.)  On November 8, 2013, the Honorable Rebecca Connolly ordered the Danielses to remove the trees, to replace the retaining wall, and to pay the Kennedys $8,000 on the ground the Kennedys' "peaceful enjoyment of their home and yard ha[d] been disturbed by the conditions on the Daniels property and that they have suffered a loss of use of portions of their yard.[fn]"  (*Id.*, 7:25-8:2, 8:10-9:9.))

### B.     The Allstate Policy

Allstate insured the Danielses at times relevant to the Underlying Action under a Deluxe Homeowners Policy, which provided liability insurance for their home at 123 Ponderosa Drive in Santa Cruz.  (Cmplt., ¶ 5.)

The policy's insuring agreement covered certain "**occurrences**" as follows:

> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

(Cmplt., Ex. A.)

The following provision entitled the Danielses to a defense from Allstate in suits for

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

covered damages:

> **We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

(Cmplt., Ex. A.)

The policy defined the relevant terms, in pertinent part, as follows:

> "**Occurrence**" – means accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

> "**Bodily injury**" – means physical harm to the body, including sickness or disease, and resulting death[.]

> "**Property damage**" – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

(Cmplt., Ex. A.)

In other words, the policy covered liability for accidental bodily (physical) injuries to a person and accidental physical injury to a person's tangible property.

## III.   LEGAL STANDARD

### A.   FRCP 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338-339 (9th Cir. 1996) (affirming dismissal of insurance suit where policy on its face did not cover underlying claims); *see also O'Keefe v. Allstate Indem. Co.*, 953 F. Supp. 2d 1111, 1116 (S.D. Cal. 2013) (dismissing bad faith claim for failure to allege a covered loss).

In evaluating a 12(b)(6) motion, the Court may disregard conclusory allegations or legal characterizations cast in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2000) (a court is "not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). A court should dismiss a claim

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

without leave to amend if the party cannot cure the defects. *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

### B.    FRCP 12(f)

Federal Rule of Civil Procedure 12(f) empowers the Court to "order stricken from any pleading any insufficient . . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).  A motion to strike is the appropriate means of eliminating improper claims.  *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 64 F.3d 1282, 1290 (9th Cir. 1995).  A request for punitive damages is such a claim.  *See BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 916-17 (8th Cir. 2007) (affirming ruling striking prayer for punitive damages under rule 12(f)).

### C.    FRCP 8

Federal Rule of Civil Procedure 8(a)(2) requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Rather, he must allege "enough facts to state a claim to relief that is plausible on its face." The court further explained in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

In the insurance context, *Twombly* and *Iqbal* mean a party cannot allege "bad faith" by conclusion, but instead must articulate facts that, if proven, would show the insurer withheld a policy benefit with no colorable reason.  *See, e.g., Atiyeh v. Nat. Fire Ins. Co. Of Hartford*, 742 F. Supp. 2d 591, 599-600 (E.D. Pa. 2010) (bad faith cause of action failed to state a claim because it only alleged "'bare-bones' conclusory allegations"); *Pruco Life Ins. Co. v. Martin*, 2011 WL 3627282, at *3 (D. Nev. Aug. 16, 2011) (because defendant "only states in a conclusory fashion that [the insurer] acted in bad faith[, t]his does not satisfy the pleading

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415)882-5000

requirements as stated in *Iqbal*.").  As the court put it in *Luna v. Nationwide Prop. And Cas. Ins. Co.*, 798 F. Supp. 2d 821, 830-31 (S.D. Tex. 2011), a plaintiff violated Rule 8 where "he does not provide any facts that show that Nationwide's liability was reasonably clear, that his claims were covered under particular provisions of the policy, what Nationwide knew at the time it denied his claims, any proposed settlement within the policy limits that Nationwide failed to effectuate, why and how Nationwide's payments were unreasonably delayed, or where its investigation was not reasonable."[1]

California substantive law is to the same effect:  a party does not allege bad faith or punitive damages merely by asserting legal conclusions by rote.  *See Mercury Cas. Co. v. Superior Court*, 179 Cal. App. 3d 1027, 1035 (1986) (demurrer to bad faith claim properly sustained where plaintiff merely "parroted the words" of insurance claims-handling standards); *Smith v. Superior Court*, 10 Cal. App. 4th 1033, 1042 (1992) (ordering trial court to grant motion to strike, where "[t]he sole basis for seeking punitive damages are [sic] the conclusory allegations of paragraph 14" which "is devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice.").

## IV.    ARGUMENT

In light of the foregoing standards, the Danielses' claims for relief both contain fatal defects.  Because those defects cannot be cured by amendment, the complaint should be dismissed without leave to amend.

### A.    The Complaint Fails to State A Claim For Breach Of Contract

The principles governing a liability insurer's duty to defend in California are well settled.  The duty to defend is not unlimited, but extends only to the "nature and kind" of risks covered by the policy.  *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 274 (1966).  The existence or nonexistence of a duty to defend is determined by comparing the policy language with the allegations of the tendered complaint and any extrinsic facts made known to the insurer.  *See*

---

[1]  *Citing Hibbets v. Lexington Ins. Co.*, 377 Fed. Appx. 352, 355-56 (5th Cir. 2010) (dismissing bad faith claim under Louisiana law that was "nothing more than labels and conclusions and a recitation of the language of the statutes.").

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415)882-5000

*Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993). In determining its defense obligation, an insurer looks to the factual allegations on which the insured is accused of liability, not to the legal theories selected to recover damages. *Gray*, 65 Cal. 2d at 276-77. An insured cannot manufacture a duty to defend by speculating over facts not pleaded in the complaint or otherwise unknown to its insurer. *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995); *see also Olympic Club v. Those Underwriters at Lloyd's, London*, 991 F.2d 497, 503 (9th Cir. 1993) ("Only amendments . . . clearly supported by the facts already pled in the complaint may support a finding of potential liability.").

The burden is on the insured to show an action seeks damages within the basic scope of coverage. *See Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 16 (1995); *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993). For reasons that follow, the Danielses cannot show they were sued for covered damages.

### 1.     The Underlying Complaint Pled No "Accident"

The first predicate for coverage under Allstate's policy is an "**occurrence**," a term that California courts have long equated with "accident." *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 805 (1994). The term "accident," in turn, refers to "'an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause'" *Hogan v. Midland Nat. Ins. Co.*, 3 Cal. 3d 553, 559 (1970) (quoting *Geddes & Smith v. St. Paul Mercury Indemnity Co.*, 51 Cal. 2d 558, 563-564 (1959)); *see also Delgado v. Interinsurance Exchange of Automobile Club of Southern California*, 47 Cal. 4th 302, 308 (2009) (same). Put differently, an accident is "something out of the usual course of events . . . which happens suddenly and unexpectedly and without design[.]" *State Farm Fire & Cas. Co. v. Drasin*, 152 Cal. App. 3d 864, 865 (1984).

Because the term "accident" refers to an "unexpected, undesigned, and unforeseen" event, it does not include "the result of *normal deterioration*" of property that "might be *expected to wear out or collapse*." *Geddes*, 51 Cal. 2d at 564 (emphasis added). Accordingly, "the question would be whether the cause of the [alleged harm] was the culmination of a progressive deterioration . . . , or whether it was a sudden and unexpected event in its own

DENTONS US LLP
525 MARKET STREET, 26ᵀᴴ FLOOR
SAN FRANCISCO, CA 94105
(415)882-5000

right."  *Khatchatrian v. Continental Cas. Co.*, 332 F.3d 1227, 1228 (9th Cir. 2003) (death from a stroke was not "accidental," as interpreted under California law, where the insured's own doctor stated that the stroke was caused by chronic high blood pressure or hypertension).

Here, the Underlying Action involved two fundamental allegations:  that (1) "a manmade wooden retaining wall and fence on [the Danieless'] property retaining soil fill . . . was in danger of failing due to poor construction and poor condition"  (Cmplt., ¶ 8), and that (2) despite having knowledge of the conditions of the wall, the Danielses "refused to take any action to remedy the man-made and natural hazards on their property."  (*Id.*, Ex. B, ¶ 18.)  Neither contention described an "accident" under California law.

a)        The Retaining Wall's Condition Was No "Accident"

The critical fact alleged in the Underlying Action was that the retaining wall on the Danielses' property had deteriorated over twenty years and posed a threat of failure.  Neither the deterioration of wood over twenty years nor the refusal to maintain one's property constitutes an "accident" under California law.

Here, nothing alleged in the Underlying Action even remotely described something that happened "suddenly and unexpectedly and without design."  Instead, the Kennedys claimed the wooden retaining wall was in danger of failing, after twenty years of exposure to sun, rain, and oceanside humidity, "due to its poor construction, age and/or damage caused by tree roots[ that have grown into the wall.]"  (Cmplt., Ex. B, ¶¶ 8-18.)  Stated differently, the wall's alleged dangerous condition was the result of "normal deterioration" or the "culmination of a progressive deterioration."  *See Geddes*, 51 Cal. 2d at 564; *Khatchatrian*, 332 F.3d at 1228.

Courts applying California law have specifically held that an insured's failure to maintain his property is no "accident."  In *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 148 Cal. App. 4th 976, 981 (2007), the insured was sued for failing to maintain and repair a premises it owned, depriving the claimant (a tenant) of use of part of the property.  *Id.*  The Court of Appeal held that, "whatever the nature of the managerial decisions made by Cen-Fed which led to its failure to fulfill its promised maintenance obligations, they were not the result of a fortuitous accident; and they thus could not have resulted in an 'occurrence.'"  *Id.* at 989.

1   Similarly, in *Allstate Ins. Co. v. Morgan*, 806 F. Supp. 1460, 1464-65 (N.D. Cal. 1992), the

2   insured was sued for loss of use and enjoyment of a property that the underlying plaintiffs had

3   purchased, because the insured had failed to dredge the dock area around the home. As the court

4   explained at 1465, as in *Cen-Fed*, the failure to maintain one's own property is simply not an

5   "accident":

6       it cannot be that the build-up of siltation underneath and around the
        dock was in any way "unexpected, unforeseen, or undesigned.". . . .

7       Whatever their reasons, the Morgans chose not to dredge around and
        underneath their dock. In light of their knowledge of the need for

8       dredging, the resulting loss of use and enjoyment was certainly
        foreseeable and does not constitute an "accident" under the policy.

9       Furthermore, it is irrelevant that the Morgans may not have intended to
        damage the Tromblers. California courts have held that a loss does not

10      become "accidental" simply because the insured did not intend to cause
        the injury.

11

12  Here, as in *Cen-Fed* and *Morgan*, the deterioration of a 20 year-old, man-made, wooden

13  retaining wall cannot be "unexpected, unforeseen, or undesigned." To the contrary, the gradual

14  deterioration of wood over two decades from exposure to the elements is pretty much the

15  antithesis of a sudden, unexpected, unforeseen, or unusual event.

16

        **b)   The Decision To Disregard The Wall's Condition Was No**
17           **Accident, Either**

18  Just as the deterioration of the Danielses' retaining wall was no "accident," their refusal

19  to take corrective action in response to the Kennedys' requests – which was the reason they were

20  sued – was no "accident," either.

21  Under California law, an insured's conscious decision to deny another's request is not an

22  accident. *See Fibreboard Corp. v. Hartford Acc. & Indem. Co.*, 16 Cal. App. 4th 492, 510-11

23  (1993) (consequences of "conscious decision making" are not accidental); *Lipson v. Jordache*

24  *Enterprises, Inc.*, 9 Cal. App. 4th 151, 159 (1992) ("any intentional conduct, . . . even if due to a

25  misunderstanding, is not covered as an occurrence"). Stated concisely, deliberate conduct is not

26  "accidental." *Royal Globe Ins. Co. v. Whitaker*, 181 Cal. App. 3d 532, 537 (1986); *Ray v.*

27  *Valley Forge Ins. Co.*, 77 Cal. App. 4th 1039, 1045-1046 (1999) (holding no "occurrence"

28  existed where damage resulted from good faith decision to utilize certain building materials).

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

In the subject matter, the Kennedys nowhere suggested that the Danielses "accidentally" failed to repair the retaining wall.  Quite to the contrary, the Kennedys contended that, starting in May 2012 – fully nine months before the Underlying Action was filed – they made repeated requests that the Danielses address the alleged dangerous situation.  The Danielses refused. (Cmplt., Ex. B, ¶ 18; RFJN, Ex. A, 3:3-4.)  Indeed, as the court in the Underlying Action explained, "[t]he Daniels did not respond in any substantive manner to [the Kennedys'] multiple requests" to repair the wall because "Mr. Daniels . . . did not like the manner in which the Kennedys approached him and therefore decided not to do anything in response."  (RFJN, Ex. A, 3:11-13.)  In other words, the Danielses were made aware of the condition of the wall, but refused to repair it because they were offended by the Kennedys' attitude.  As noted in *Hogan*, at 560, "the conduct being calculated and deliberate, no accident occurred within the *Geddes I* definition."

The Danielses will likely argue there was an accident because they believed the Kennedys' allegations were meritless or because they intended no harm.  Neither argument provides a basis for finding coverage.

First, a long line of California cases has held that, where a complaint alleges noncovered events, the insured's denial of wrongdoing raises no possibility that he will incur liability for a *covered* event – the cornerstone of the duty to defend.  *North America Building Maintenance, Inc. v. Fireman's Fund Insurance Co.*, 137 Cal. App. 4th 627, 639 (2006) ("an insurer has no duty to defend a noncovered claim even if the claim is false"); *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 175 Cal. App. 4th 750, 765 (2009) (the duty to defend does not "force the insurer to defend all actions, regardless of coverage, where the insured simply asserted that the plaintiff's case was meritless.[2]

---

[2] *See also Taub v. First State Ins. Co.*, 44 Cal. App. 4th 811, 821-822 (1995) (duty to defend "groundless, false or fraudulent" suits presumes the suit seeks covered damages in the first place); *Nichols v. Great Am. Ins. Co.*, 169 Cal. App. 766, 776-777 (1985) ("[T]he duty to defend a suit which raises a possibility of liability, but is eventually shown to be groundless, does not equate with a duty to defend a suit which raises no potential liability.") (emphasis in original); *California Ins. Guar. Ass'n v. Wood*, 217 Cal. App. 3d 944, 947-948 (1990) ("The validity of Maria's cause of action is a different issue than the question of Cal-Farm's duty to defend.").

Similarly, an insured who engages in deliberate conduct cannot claim an "accident" on the ground he did not expect or intend to cause any harm. *See, e.g., Merced Mut. Ins. Co. v. Mendez,* 213 Cal. App. 3d 41, 50 (1989) ("where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury."); *Allstate Ins. Co. v. Tankovich*, 776 F. Supp. 1394, 1396 (N.D. Cal. 1991) (repeated instances of racially motivated conduct, "despite the lack of a subjective intent to cause injury, cannot be deemed accidental."); *Ray v. Valley Forge Ins. Co.,* 77 Cal. App. 4th 1039, 1045-46 (1999) ("The plain meaning of the word 'accident' is an event occurring unexpectedly or by chance."); *Am. Guar. and Liability Ins. Co. v. Vista Medical Supply,* 699 F. Supp. 787, 791 (N.D. Cal. 1988) ("Where the act giving rise to damages was intentional, the California courts have rejected the argument that while the act was intentional, the damages were not, and thus should be covered under the policy."). Thus, while the Danielses may have felt they were acting within their rights in refusing to repair the wall – and may have been – their belief in the righteousness of their conduct did not make the conduct any less deliberate. *See Swain v. Cal. Cas. Ins. Co.*, 99 Cal. App. 4th 1, 9-10 (2002) ("We know of no case from this or any other jurisdiction where a harm knowingly and purposefully inflicted was held 'accidental' merely because the person inflicting it erroneously believed himself entitled to do so.")

The Danielses' complaint in this action identifies no facts suggesting the wall's deterioration or their refusal to repair it was "accidental." Instead, they merely assert by conclusion that "the facts alleged in the complaint against [the Danielses] and other extrinsic facts readily available to Allstate state a claim potentially within the coverage of the insurance policy." That is insufficient to state a claim. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); Federal Rule of Civil Procedure 8(a)(2); *Iqbal*, 129 S. Ct. at 1949 (that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

### 2.   The Kennedys Sought No Damages For "Bodily Injury" Or "Property Damage" As Defined in the Allstate Policy

In addition to the "accident" requirement discussed above, the policy only covered suits seeking damages for "**bodily injury**" or "**property damage**."  The Kennedys' alleged none.

As the Danielses concede, the Kennedys alleged in the Underlying Action that they "suffered and continue[d] to suffer damages, including but not limited to lost use and enjoyment of their property, discomfort, annoyance, and mental and emotional distress."  (Cmplt. ¶ 9.)  Those alleged injuries were due to "an imminent *risk* of harm" created by the wall which the Kennedys alleged "*will* fail in the near future" and the "substantial *risk* that *when* the wall fails, . . . one or both of the 24-inch diameter fir trees *will* fall as well."  (*Id.*, Ex. B, ¶ 20 [emphasis supplied].)  Those allegations involved neither type of covered injury.

As to the "**property damage**" coverage, that term meant "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." Because the policy only covered loss of use of property *resulting from* physical injury to it, it did not cover loss of use of property (like the Kennedys') that was not physically damaged. *Compare Hendrickson v. Zurich American Ins. Co. of Illinois*, 72 Cal. App. 4th 1084, 1090 (1999) and *Borg v. Transamerica Ins. Co.*, 47 Cal. App. 4th 448 (1996) (policy covered "physical injury to, destruction of, or loss of use of tangible property") with *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1118-19 (1995) (policy language like Allstate's "refers to the loss of use of tangible property that suffer[ed] some physical injury or destruction.")

In the Underlying Action, the Kennedys alleged no physical harm to their property, nor did they seek compensation for such damage.  Instead, they contended they were deprived of the reasonable use and enjoyment of their property because of the "substantial safety *risk* to [their] persons and property because of the *potential* trunk and/or whole tree failure" and "*threat* from [a] landslide."  (Cmplt., ¶¶ 12, 22 (emphasis added).)  Concomitantly, the court in Underlying Action awarded no damages for physical injury to the Kennedys' property, but only ordered the

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

Danielses to repair their own wall, to remove the trees embedded in it,[3] and to pay the Kennedys $8,000 because their "peaceful enjoyment of their home and yard ha[d] been disturbed by the conditions on the Daniels property and . . . they have suffered a loss of use of portions of their yard.[fn]"  (RFJN, Ex. A, 7:25-8:2.)  Stated differently, the Kennedys did not sue the Danielses over physical damage to their property, but because their fear of a future landslide deterred them from using it.

The loss of an intangible property right – as opposed to "physical injury to or destruction of tangible property" – does not constitute "property damage" under California law.  As the Supreme Court explained in its seminal decision in *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 880 (2001), "'tangible property' refers to things that can be touched, seen, and smelled," and "[t]o construe tangible property as including a legal interest . . . in property 'requires a strained and farfetched interpretation.'"  (Quoting *Giddings v. Industrial Indemnity Co.*, 112 Cal. App. 3d 213, 219 (1980).)  Accordingly, a policy that covers physical damage to tangible property is "not intended to cover intangible property losses, including loss of an investment, loss of goodwill or loss of intangible property use."  *Id.* at 879; *see Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1119 (1995) ("pure rights in property, such as those claimed to have been lost by [plaintiff] in her underlying complaint, are by definition not the kind of physical damage or injury to tangible"); *see also City of Laguna Beach v. Mead Reins. Corp.*, 226 Cal. App. 3d 822, 834 (1990) (suit to force insured to take action to prevent future landslide did not seek damages on account of property damage).  Accordingly, the Underlying Action alleged no "**property damage**."

_____

[3] Exclusions 2 and 14 of the policy barred coverage for damage to property the Danielses owned, used, occupied or cared for.  (Cmplt., Ex. A); *see Western World Ins. Co. v. Dana*, 765 F. Supp. 1011, 1014 (E.D. Cal. 1991) (similar exclusion precluded coverage for environmental contamination which occurred on property rented to the insured); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 759 (1993) (exclusion for damage to property in the insured's care, custody or control applied to soil and water contamination on property it leased); *Allstate Ins. Co. v. Chaney*, 804 F. Supp. 1219, 1223 (N.D. Cal. 1992) (claims for negligent repair, maintenance and construction of insured's own property not covered); *Old Republic Ins. Co. v. Superior Court*, 66 Cal. App. 4th 128, 151 (1998) ("On its face, this exclusion unambiguously precludes coverage for any claim for property damage to property occupied or rented to the [insureds].").  Accordingly, the policy did not cover the repair of the insured's retaining wall or removal of their trees.

Similarly, the Kennedys asserted no claim for "**bodily injury**," defined in relevant part as "physical harm to the body, including sickness or disease, and resulting death[.]"  (Cmplt., Ex. A.)  Under a well-established body of California law, "**bodily injury**" does not include emotional distress.  *See Allstate Ins. Co. v. LaPore*, 762 F. Supp. 268, 271 (N.D. Cal. 1991) (plaintiff's allegations of "shame, mortification and hurt feelings" did not state facts constituting "bodily injury"); *Chatton v. Nat'l Union Fire Ins. Co. of Pittsburgh*, *PA*, 10 Cal. App. 4th 846, 855 (1992) (the "widespread agreement that the 'bodily injury' clause of a CGL policy does not cover claims resulting from mere emotional harm is the law of California"); *Aim Ins. Co. v. Culcasi*, 229 Cal. App. 3d 209, 220 (1991) (bodily injury "means physical injury and its consequences.  It does not include emotional distress in the absence of physical injury"); *accord Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 775-76, 782 (2006) ("the parties would expect 'bodily injury' to mean physical conditions – a bruise, cut, fracture, or concussion – caused directly by a falling beam, a collapsing wall, a cracked floor, or a broken fixture").

Here, although the Kennedys alleged the condition of the deteriorating wall caused them annoyance and discomfort, they did not allege (or recover any damages for) any resulting physical injury.  Thus, the annoyance and discomfort they experienced were (if anything) emotional, not physical, injury.

### B.    Allstate Did Not Act In "Bad Faith"

In addition to seeking contract damages, the Danielses also seek tort damages for insurance bad faith claim.  To plead such a claim, the Danielses must allege that (1) Allstate wrongfully withheld policy benefits, and (2) the withholding was unreasonable.  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990); *see also Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (1995).  Neither element is pleaded here.

### 1.    Allstate Cannot Have Bad Faith Liability Because No Coverage Was Available

Under California law, the duty of good faith and fair dealing is implied "as a supplement to the express contractual covenants."  *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (1995).  As

DENTONS US LLP
525 MARKET STREET, 26ᵀᴴ FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151-53 (1991), explained, "bad faith" liability stems from the failure to perform a *contract*, and cannot exist in the absence of its theoretical underpinnings – a duty to perform a contractual obligation.  Without a breach of contract, there is no bad faith.  *Waller*, 11 Cal. 4th at 36.

Here, as explained above, no coverage was available for the Underlying Action.  As a consequence, plaintiffs' bad faith cause of action necessarily fails as well.

### 2.    Allstate's Denial Of Coverage Was Reasonable

The second element of a bad faith claim in California is that a coverage denial was *unreasonable* – that is, there was no plausible basis for it.  This is not such a case.

Under California law, no bad faith exists where there was a *genuine dispute* "as to the existence of coverage liability or the amount of the insured's coverage claim[.]"  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 724 (2007); *Rappaport-Scott v. Interinsurance Exchange of the Auto. Club*, 146 Cal. App. 4th 831, 837 (2007) (withholding benefits is not unreasonable if there is a genuine dispute as to the amount due).  Mistaken or even erroneous withholding of policy benefits, if based on a legitimate dispute as to the insurer's obligations, does not expose the insurer to bad faith liability.  *Chateau Chamberay Homeowners Ass'n. v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001) ("We are not called upon to determine whether AIIC's view as to the proper outcome of the adjustment process was correct," but only that "its position . . . was reasonable or that AIIC had proper cause to assert the positions that it did.").

The "genuine dispute" doctrine has been developed over decades in a series of Ninth Circuit cases applying California law, which have consistently held an insurer commits no "bad faith" when it denies coverage on a ground that, even if rejected by a court, if supported by plausible or fairly debatable reasoning.  *See, e.g., Safeco Ins. Co. of America v. Guyton*, 692 F.2d 551, 557 (9th Cir. 1982) ("Although we conclude that Policyholders' losses are covered by the policy if third-party negligence is established, we agree that there existed a genuine issue as to Safeco's liability under California law" and "affirm the dismissal of Policyholders' claims of bad faith"); *Franceschi v. Am. Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir. 1988) (affirming summary judgment where "there was a genuinely arguable issue whether the term 'medical treatment' as used in the policy was

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415) 882-5000

ambiguous," and "AMI's interpretation of the term was not arbitrary or unreasonable."); *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 993 (9th Cir. 2001) (noting "[t]he Ninth Circuit has affirmed the dismissal of bad faith claims in numerous cases over the past 17 years because of genuine issues about liability under California law"); *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 670 (9th Cir. 2003) (affirming summary judgment because "reasonableness is all that need be shown, even if it would be possible for a trier of fact to determine that Allstate ultimately is liable under the policy."); *Lunsford v. American Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (insurer incorrectly refused to defend, but summary judgment was proper on bad faith because it "based its refusal to defend . . . a reasonable construction of the policy."); *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 283 (9th Cir. 1992) (although "Pacific's and Hartford's interpretation of the contract is incorrect," "the interpretation is not so unreasonable as to be a mere pretext for avoiding further investigation" and therefore "a genuine issue did exist concerning liability.").

Here, Allstate's coverage position was eminently reasonable.  As noted above, the Underlying Action involved patently deliberate conduct that resulted exclusively in intangible injuries, not "**bodily injury**" or "**property damage**."  Simply stated, the Kennedys complained that the Danielses refused to repair a 20-year-old retaining wall that was "severely distressed," leading to "lost use and enjoyment of their property, discomfort, annoyance, and mental and emotional distress."  (Cmplt., Ex. B, ¶¶ 8, 9, 20.)  If for some reason Allstate's coverage denial was incorrect, it nonetheless had compelling reasons to reach the conclusions that it did.

**C.      The Court Should Strike The Danielses' Request For Punitive Damages**

Finally, even if the Danielses stated a cognizable tort claim against Allstate, the Court should strike their request for punitive damages because the complaint alleges no basis for such relief.

To recover punitive damages, the Danielses must allege and prove by "clear and convincing" evidence that Allstate was guilty of "oppression, fraud or malice."  *See* Cal. Civ. Code § 3294.  The punitive damages test requires proof of conduct "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary

decent people." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994); *see also Silberg v. California Life Ins. Co.*, 11 Cal. 3d 452, 462 (1974) (punitive damages require an "act [committed] with the intent to vex, injure or annoy with a conscious disregard of [the insured's] rights"). These terms must be described factually, not inserted by rote, to state a claim for punitive damages. *Smith v. Superior Court*, 10 Cal. App. 4th 1033, 1041 (1992).

Here, accepting the Danielses' factual allegations as true, nothing in their complaint explains why Allstate deserves punishment for its handling of the Underlying Action. At best, the Danieleses have alleged that Allstate should have paid for their defense and the judgment against them. The Danielses make no factual – or even conclusory – allegations that, if true, would support a bad faith claim, let alone a punitive damages claim. *See C & H Foods Co. v. Hartford Ins. Co.*, 163 Cal. App. 3d 1055, 1068 (1984) (bare allegation of "bad faith" cannot support punitive damages); *see also Slottow v. American Cas. Co. of Reading, PA*, 10 F.3d 1355, 1362 (9th Cir. 1993) ("Nothing in California law suggests a refusal to provide coverage as requested by an insured, when the refusal is supported by a reasonable, good faith argument, can form the basis for punitive damages."). Therefore, the Court should strike the punitive damages prayer from the complaint.

## V.    CONCLUSION

The Danielses' Allstate policy covered suits alleging an "**occurrence**," defined in relevant part as an (1) "accident" resulting in (2) "**bodily injury**" or "**property damage**." The Kennedys' underlying complaint described neither aspect of the "**occurrence**" definition, a conclusion that no amendment of the instant complaint could alter. Because Allstate properly denied coverage for the Underlying Action, the Court should dismiss the instant complaint

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DENTONS US LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CA 94105
(415)882-5000

without leave to amend and strike the prayer for punitive damages.

Dated:  March 3, 2014                          DENTONS US LLP


By _____/s/ Michael Barnes_____
          MICHAEL BARNES

Attorneys for Defendant
ALLSTATE INSURANCE COMPANY