1
2
3
4
5
6
7

United States District Court
For the Northern District of California

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

| | | |
|---|---|---|
| 11 | JENNY K. DANIELS and MARK M. DANIELS, | ) Case No.: 14-CV-00824-LHK |
| 12 | | ) ORDER GRANTING MOTION TO |
| 13 | Plaintiffs, | ) DISMISS WITH LEAVE TO AMEND |
| | v. | ) |
| 14 | | ) |
| | ALLSTATE INSURANCE COMPANY, an | ) |
| 15 | Illinois corporation, and DOES 1 through 25, inclusive, | ) |
| 16 | | ) |
| | Defendants. | ) |
| 17 | | ) |

18          Plaintiffs Jenny and Mark Daniels ("Plaintiffs") initiated this litigation against their insurer,

19   Allstate Insurance Company ("Defendant"), for breach of insurance contract and breach of the

20   implied covenant of good faith. *See* ECF No. 2. Plaintiffs claim that Defendant had a duty to

21   defend Plaintiffs in underlying litigation in Santa Cruz County Superior Court. *See* ECF No. 8.

22   Defendant has filed a Motion to Dismiss, in which Defendant contends no potential for coverage

23   existed under the insurance policy as a matter of law. *See id.* Plaintiffs have filed an Opposition,

24   *see* ECF No. 16, and Defendant has filed a Reply, *see* ECF No. 18. The Court finds this motion

25   suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and hereby

26   VACATES the hearing set for June 19, 2014 at 1:30 p.m. The Court further CONTINUES the Case

27   Management Confernece set for June 19, 2014 to October 8, 2014 at 2 p.m. Having considered the

28

1

briefing, the record in this case, and applicable law, the Court GRANTS Defendant's Motion to Dismiss with leave to amend for the reasons stated below.

## I.      BACKGROUND

### A.      The Insurance Policy

Plaintiffs purchased a homeowner's insurance policy from Defendant in September 2012. The policy was renewed effective September 2013 and remains in force. ECF No. 2 ¶ 5. Pursuant to the policy, Defendant agreed to indemnify and defend Plaintiffs for damages as follows:

> Subect to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

ECF No. 8 at 2. The policy defined "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general conditions during the policy period, resulting in bodily injury or property damage." *Id.* at 3.

### B.      The Underlying Litigation

The instant case arises out of a dispute between Plaintiffs and their neighbors, Joyce and Edward Kennedy ("the Kennedys"), the plaintiffs in the underlying litigation. The Kennedys and Plaintiffs own adjacent property lots in Santa Cruz, California. Because of the hillside topography of the land, the Kennedys' property is situated below Plaintiffs' property, separated by a shared property line. ECF No. 2 Ex. B ¶ 9. The underlying dispute concerned the removal of a twenty-year-old man-made wooden retaining wall located on Plaintiffs' property along the boundary line shared with the Kennedys. *Id.* at ¶ 8. The retaining wall, which was built by previous owners of Plainitffs' property, supported large amounts of fill soil that kept Plaintiffs' backyard level. *Id.* at ¶ 11. In addition, two large fir trees, one located at the end of the retaining wall ("Tree 1") and the other about five feet upslope from the center of the wall ("Tree 2"), had root systems embedded in the fill soil. *Id.* at ¶¶ 13-15.

From their own property, the Kennedys noticed that Plaintiffs' retaining wall was collapsing in various places. This prompted the Kennedys to hire Geotechnical engineers and an arborist to examine the condition of the wall and trees. *Id.* at ¶ 10. The experts' reports confirmed

2

United States District Court
For the Northern District of California

that the wall was severely distressed and posed a threat of collapsing from "poor construction, age and/or damage caused by tree roots." *Id.* at ¶ 11. The wall's failure would result in a landslide from the fill soil on Plaintiffs' property that would inundate the Kennedys' property below. *Id* at. ¶ 20. In addition to the tree roots aggravating the threat of the wall's collapse, there was also some risk that the trees might fall onto the Kennedys' property should the wall fall and release the fill soil that supported the trees. *Id.* at ¶¶ 17-20.

Throughout 2012, the Kennedys repeatedly expressed their concerns to Plaintiffs, seeking a solution to the risks the wall and trees posed to the Kennedys' safety and property. *Id.* at ¶ 18. The Kennedys made multiple visits and requests to Plaintiffs to rebuild the wall and remove the trees, and even suggested alternative dispute resolution. ECF No. 8-1, Ex. A at 3. The Kennedys also sent a copy of the arborist report, which detailed the dangers posed by the trees, to Plaintiffs. ECF No. 2, Ex. B ¶ 18. Despite having knowledge of the condition of the wall and trees and the distress these hazards caused the Kennedys, Plaintiffs refused to take any corrective action. *Id.*

Unable to resolve the issue with Plaintiffs directly, the Kennedys initiated the underlying litigation against Plaintiffs on February 15, 2013 in Santa Cruz County Superior Court, seeking declaratory and injunctive relief as well as damages. The Kennedys' complaint alleged that the wall and trees on Plaintiffs' property constituted a private nuisance. ECF No. 2 Ex. B. ¶ 20. The complaint further alleged that Plaintiffs acted unreasonably by failing to remedy these hazards. *Id* at ¶ 21. The Superior Court held a three-day bench trial starting on October 15, 2013. Plaintiffs conceded at trial that the wall needed to be replaced and Tree 1 needed to be removed. ECF No. 8-1, Ex. A at 4. Plaintiffs testified that they did not like the Kennedys' approach and therefore "decided not to do anything in response" to the Kennedys' request to repair the wall and remove the trees. *Id.* at 3. On November 8, 2013, the Superior Court ruled in favor of the Kennedys, declaring the retaining wall to be a nuisance. The Court required Plaintiffs to replace the wall and remove the trees and granted $8,000 in monetary damages to the Kennedys for discomfort and annoyance. *Id.* at 8-9.[1]

---

[1] Defendant requests judicial notice of the Santa Cruz County Superior Court's Statement of Decision in *Kennedy v. Daniels*. ECF No. 8-1. Proper subjects of judicial notice include orders

Case No.:  14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

### C.     The Insurance Dispute and This Litigation

In February or March 2013, Plaintiffs tendered defense of the underlying litigation to Defendant. Defendant denied coverage in a response letter dated March 22, 2013. *See* ECF No. 2, Ex. C. In the letter, Defendant stated that the insurance policy did not cover the allegations of the underlying complaint because the policy only covered "accidents" resulting in "bodily injury" or "property damage," and that the policy excluded coverage for damage to property owned or used by an insured. *See id.* Defendant gave Plaintiffs the opportunity to provide additional information or considerations if Plaintiffs believed Defendant had unfairly or erroneously denied coverage. *See id.* Plaintiffs have not alleged that they supplied additional information to Defendant or pursued the paths to relief offered to them by Defendant.

Rather, on January 19, 2014, Plaintiffs brought the instant litigation in Santa Cruz County Superior Court against Defendant for breach of written contract and breach of implied covenant of good faith and fair dealing, seeking compensatory and punitive damages, prejudgment interest, and attorneys' fees. *See* ECF No. 1 ¶¶ 1-2. Attached to the complaint were the insurance policy, the Kennedys' complaint in the underlying litigation, and Defendants' letter denying coverage. *See* ECF No. 2. On February 24, 2014, Defendant removed the action to this Court. *See id.* On March 3, 2014, Defendant filed the instant Motion to Dismiss and Motion to Strike Plaintiffs' request for punitive damages. *See* ECF No. 8.[2] Plaintiffs filed an Opposition on March 31, 2014. *See* ECF No. 16. Defendant filed a Reply on April 14, 2014. *See* ECF No. 18.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

issued by other courts. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) ("We take judicial notice of the California Court of Appeal opinion"). Accordingly, the Court GRANTS the unopposed request for judicial notice.

[2] The Motion was re-noticed three days after the initial Motion was filed, *see* ECF No. 12, because the case was reassigned from Magistrate Judge Grewal to the undersigned. The original motion, noticed before Judge Grewal, is DENIED AS MOOT. *See* ECF No. 8.

Case No.:  14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

**United States District Court**
For the Northern District of California

12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). A court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

## B.     Leave to Amend

If a court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (internal quotation marks omitted). Nonetheless, a district

5

1    court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the

2    movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

3    to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See*

4    *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v.*

5    *Davis*, 371 U.S. 178, 182 (1962)). Where those conditions are not present, a court generally grants

6    leave to amend.

7    **III.    DISCUSSION**

8         Plaintiffs allege breach of written contract and breach of the implied warranty of good faith

9    and fair dealing. Plaintiffs allege that Defendant breached the contract and the implied warranty of

10   good faith and fair dealing by: (1) failing to defend Plaintiffs in the underlying litigation despite a

11   duty to do so and (2) failing to adequately investigate the underlying litigation prior to the denial of

12   defense and indemnification. Plaintiffs seek punitive damages, contending that Defendant's breach

13   of contract was willful, malicious, and in conscious disregard of Plaintiffs' rights. The Court

14   addresses the failure to defend and failure to investigate claims separately. Because the Court finds

15   that Plaintiffs have not adequately alleged either set of claims, the Court grants Defendant's

16   motion, as stated below.

17        **A.    Failure to Defend Claims**

18        In its Motion to Dismiss, Defendant contends coverage was properly denied because the

19   underlying complaint against the Plaintiffs did not allege "accidental" conduct to satisfy the

20   definition of "occurrence," and the Kennedys sought no damages for "bodily injury" or "property

21   damage" as defined in the insurance policy. Accordingly, Defendant contends that Plaintiffs cannot

22   state a claim for relief. Defendant further moves to strike Plaintiffs' punitive damages allegations.

23   The Court concludes that Plaintiffs have not alleged any "occurrence" for the reasons stated below.

24   There is no duty to defend in the absence of an "occurrence," and therefore there is no breach of

25   contract or bad faith. Accordingly, the Court does not reach the other issues raised in Defendant's

26   Motion to Dismiss.

27        Before the Court turns to the meaning of "occurrence" under the policy, the Court

28   summarizes some basic principles of insurance law in California. Under California law, an insurer

6

Case No.:   14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

*United States District Court*
For the Northern District of California

has a broad duty to defend insured entities against claims that create a potential for indemnity. *See Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (1993). The duty to defend is broader than the duty to indemnify. *See Horace Mann Ins. CO. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). While the duty to defend is broad, however, the duty to defend is not unlimited. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995). In determining whether there is a duty to defend, courts must look to the complaint in the underlying litigation and "all facts known to the insurer from any source." *See Montrose Chem. Corp.*, 6 Cal. 4th at 300. The ultimate question is whether the facts known to Defendant at the time it refused to defend the underlying lawsuit created the potential for coverage under the policy. *See Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995).

If there was no potential for coverage under the insurance policy based on the underlying complaint and extrinsic facts made known to the insurer, then the insurer has not breached the insurance contract by refusing to defend. *See Montrose Chem. Corp.*, 6 Cal. 4th at 295. The insured has the burden of adequately alleging that there was an "occurrence." *See Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998). Furthermore, "a bad faith claim cannot be maintained unless policy benefits are due." *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 (1990).

In interpreting an insurance policy, the Court first looks to the language of the policy itself. The "clear and explicit meaning" of the provisions "interpreted in their ordinary and popular sense . . . controls judicial interpretation unless [the disputed terms are] used by the parties in a technical sense, or unless a special meaning is given to them by usage." *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995). "If the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning." *Id.* at 666-67. "[I]f the disputed terms are ambiguous, a court must attempt to resolve the ambiguity by adopting the meaning that reflects the objectively reasonable expectations of the insured." *Flintkote Co. v. Gen. Acc. Assur. Co.*, 410 F. Supp. 2d 875, 881 (N.D. Cal. 2006). "[I]f the court is unable to determine the objective expectations of the insured, the ambiguity is resolved against the insurer." *Id.* at 882.

Case No.:  14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    The policy in the instant case states only that "an occurence" is an "accident, including

2 continuous or repeated exposure to substantially the same general conditions during the policy

3 period, resulting in bodily injury or property damage." The policy does not further define accident.

4 Nevertheless, it is well-settled in California law that an "accident" for insurance coverage purposes

5 must be "an unexpected, unforeseen, or undesigned happening or consequence from either a known

6 or unknown cause." *Hogan v. Midland National Ins. Co.*, 3 Cal.3d 553, 559–561 (1970) (quoting

7 *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co*, 51 Cal.2d 558, 563–564 (1959)).

8 Furthermore, an accident must be unintended and a "matter of fortuity." *Merced Mut. Ins. Co. v.*

9 *Mendez*, 213 Cal. App. 3d 41, 50 (1989). Coverage for "accidents" reflects the fact that insurance

10 typically protects unknown risks of harm rather than certain or expected harm. *See Chu v.*

11 *Canadian Indem. Co.*, 224 Cal. App. 3d 86, 94 (1990). Judicial construction of the term "accident"

12 in previous decisions precludes any assertion that the term is ambiguous. *See Allstate Ins. Co. v.*

13 *LaPore*, 762 F. Supp. 268, 270 (N.D.Cal. 1991).

14    The Court now turns to the question of whether the allegations and facts known to

15 Defendant raised the possibility of coverage under the policy. To find the potential for coverage

16 under the policy as an "occurrence," there must be some "accident" based on the underlying claim

17 and extrinsic facts known to Defendant at time of tender. Defendant contends that the failing

18 condition of the retaining wall and trees and Plaintiffs' refusal to replace the wall and trees in

19 response to the Kennedys' concerns  are not accidental because these events were expected and

20 intentional. Plaintiffs' theory as to why these events are accidental is not altogether clear, but the

21 theory seems to be that the deterioration of the property occurred gradually, and Plaintiffs' refusal

22 to take action was at most a negligent act. The Court analyzes whether either the failing condition

23 of the property or Plaintiffs' refusal to address the Kennedys' concerns were "accidental"

24 separately. Doing so, the Court concludes Plaintiffs have not adequately alleged that either event

25 was accidental for the reasons stated below. Therefore, there can be no "occurrence" and no

26 possibility of coverage under the policy.

27

28

8

### 1.    Condition of the Retaining Wall and Trees

The Court begins by addressing whether Plaintiffs have adequately alleged that the deterioration of the retaining wall and trees constituted an "accident." Usually, an "accident," which must be unexpected, also cannot be "a progressive condition or slow deterioration culminating in a tangible harm." *Khatchatrian v. Cont'l Cas. Co.*, 332 F.3d 1227, 1228 (9th Cir. 2003). However, the insurance policy in the instant case defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general conditions during the policy period, resulting in bodily injury or property damage." This definition allows for gradual rather than sudden or instantaneous events to be accidental. Plaintiffs focus on this distinction to contend that the deterioration of the retaining walls and trees was an "accident."

However, Plaintiffs ignore the word "including" in the definition. As the California Court of Appeal has held, the use of "including" rather than "or" in the policy language retains the "unexpected" requirement for accidents even if the definition dispenses of the "sudden" requirement. *See Shell Oil*, 12 Cal. App. 4th at 749. The specific language of this contract eliminates only the exclusion of gradual deterioration from the ambit of an "accident." Nothing about the language eliminates the well-established requirement that an "accident" be unexpected. Therefore, while the fact that the deterioration of the retaining wall and trees on Plaintiffs' property was gradual does not automatically exclude the event from coverage, the deterioration still must have been unexpected to trigger coverage. *Id.* ("The more recent 'occurrence' definitions include gradual events within the concept of 'accident,' but these policies nevertheless maintain a basic requirement that such events be accidents.").

Here, the deterioration of the wall and trees was not unexpected because the Kennedys informed Plaintiffs that the wall was failing due to its old age, poor construction, and pressure from the tree roots. Moreover, the deterioration of the wall was not only visible, but also foreseeable after twenty years of exposure to the elements without repair. Furthermore, Plaintiffs received a copy of the arborist report, which informed Plaintiffs of the failing condition of the trees. ECF No. 2 Ex. B ¶ 18. Plaintiffs even conceded at trial in the underlying litigation that the wall needed to be replaced and Tree 1 needed to be removed. *See* ECF No. 8, Ex. A at 7. The dangerous conditions

United States District Court
For the Northern District of California

1    on Plaintiffs' property, which nuisanced the Kennedys, arose as the result of predictable

2    deterioration over many years. Nothing in the underlying complaint or facts made known to

3    Defendant indicates that the progressive deterioration was unexpected or unforeseen, even if such

4    deterioration occurred gradually.

5          The authority that Plaintiffs cite, *Montrose Chem. Co. of Cal. v. Superior Court*, 6 Cal. 4th

6    287, 304 (1993), is inapposite.[3] *Montrose Chem. Co.* concerned an insurance policy with a

7    definition of occurrence identical to that in the instant case, but the facts are quite different. In

8    *Montrose Chem. Co.*, the insured sought defense in a case brought against it under the

9    Comprehensive Environmental Response, Compensation, and Liability Act of 1980, alleging that

10   the insured's conduct resulted in toxic discharges. Unlike the instant case, however, nothing in the

11   underlying complaint in *Montrose Chem. Co.* or the extrinsic evidence known to the insurer

12   "establish that [the insured] expected or intended the property damage that allegedly resulted." 6

13   Cal. 4th at 305. This is because the complaint underlying *Montrose Chem Co.* did not allege that

14   the insureds knew or intended to discharge toxic waste. In contrast, here the underlying complaint

15   explicitly stated that the Kennedys had made Plaintiffs aware of the injury and the damage that

16   resulted.

17         In sum, because an accident must be unexpected, and nothing in the facts alleged by

18   Plaintiffs suggests that Defendant should have been alerted to the unexpectedness of the

19   deterioration and resulting nuisance to the Kennedys, Plaintiffs have not adequately alleged that

20   Defendants had a duty to defend Plaintiffs in the underlying litigation.

21   _____

22   [3] Plaintiffs also cite *Remmer v. Glens Falls Indem. Co.*, 140 Cal. App. 2d 84 (1956). However,
     *Remmer* interpreted a policy with different language. There, the policy's definition of occurrence
23   was "an accident, *or* a continuous or repeated exposure to conditions, which results in injury during
     the policy period, provided the injury is accidentally caused." *Id.* at 86 (emphasis added). The
24   California Court of Appeal in *Shell Oil* explained the distinction between older policies, such as the
     one in *Remmer*, which define an "occurrence" as an accident *or* a continuous exposure, and
25   policies such as those in the instant case, which define "occurrence" as an accident *including* a
     continuous exposure. "The more recent 'occurrence' definitions include gradual events within the
26   concept of 'accident,' but these policies nevertheless maintain a basic requirement that such events
     be accidents. Under the older policies an 'occurrence' was an accident *or* exposure to damaging
27   conditions, a definition that allowed coverage for damaging exposures that were not accidents." 12
     Cal. App. 4th at 749 (emphasis in original). Accordingly, *Remmer* too is inapposite.

28

Case No.:  14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

### 2.   Plaintiffs' Refusal to Remove Retaining Wall and Trees

The Court now turns to the issue of whether Plaintiffs' refusal to remove the retaining wall and trees was an "accident." Defendant contends that this refusal was intentional, while Plaintiffs contend that the refusal was merely negligent. The Court concludes that the facts as alleged in Plaintiffs' complaint establish that the refusal to remove the retaining wall and trees was intentional.

Under California law, when an injury is the "direct and immediate result of an intended or expected event, there is no accident." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 751 (1993). To determine if an event meets the definition of "accident," California courts look to the intention to commit the act itself rather than the intention to produce the consequences of the act. *See Allstate Ins. Co. v. Chubb Grp.*, No. 97-15197, 97-15231, 1998 WL 101703, at *2 (9th Cir. Mar. 9, 1998) (citing *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 809 (1994)); *see also Mendez*, 213 Cal. App. 3d at 50 ("Where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury."). Thus, intentional conduct that gives rise to expected liability is not covered under policies that require an occurrence to be accidental. *See Hairabedian v. Allstate*, 143 F. App'x 2 (9th Cir. 2005) (holding intentional conduct resulting in a libel action against the insured is not an accident); *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 147 Cal. App. 4th 976 (2007) (finding no accident where insured breached lease obligations); *Commercial Union v. Superior Court*, 196 Cal. App. 3d 1205 (1987) (finding no accident where employer intentionally fired employee despite having no intention to cause severe emotional distress).

Plaintiffs were aware of the Kennedys' concerns regarding the condition of the wall and trees after multiple visits and requests for a resolution. *See* ECF No. 18 at 5. The injury that resulted, a private nuisance to the Kennedys, expectedly flowed from Plaintiffs' deliberate decision to ignore the Kennedys' concerns. Plaintiffs' insistence that they disagreed with the Kennedys' objections and demands to replace the wall and remove the trees, *see* ECF No. 12 at 7, is immaterial. The critical question is whether Plaintiffs intended to commit the act of choosing not to

Case No.:  14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

*United States District Court*
*For the Northern District of California*

remove the trees or the wall, not whether Plaintiffs intended the underlying effect of the act, nuisance to the Kennedys.

As the California Court of Appeal explained in *Shell Oil*, "[t]he appropriate test for 'expected' damage is whether the insured knew or believed its conduct was substantially certain or highly likely to result in that kind of damage." 12 Cal. App. 4th at 748. Furthermore, "claims of ignorance are unlikely to succeed when circumstantial evidence shows the insured expected damage or avoided confirming such a belief in hopes of denying awareness of the risk." *Id.* at 745. The facts, as Plaintiffs allege, suggest that Plaintiffs were subjectively aware of the injury to the Kennedys caused by Plaintiffs' refusal to replace the wall and trees—the Kennedys' discomfort and inability to enjoy their property. Plaintiffs *knew* the state of their property was deeply upsetting to the Kennedys and that their inaction was substantially certain to result in the Kennedys' continued search for a resolution. The facts alleged in the underlying litigation suggest that after visiting, calling, and writing to Plaintiffs on their own, the Kennedys had legal counsel reach out to Plaintiffs, further indicating that the state of the wall was creating a nuisance for the Kennedys. *See* ECF No. 8, Ex. A at 3. Plaintiffs testified at trial that they did not cooperate with the Kennedys because they did not like the Kennedys or their approach and decided not to respond. *See* ECF No. 8, Ex. A at 6. Based on the history of the Kennedys' requests and Plaintiffs' continued refusal to respond, it is implausible that Plaintiffs were not subjectively aware of the nuisance that their wall and trees were creating for the Kennedys.

Plaintiffs rely entirely on *State of California v. Allstate Ins. Co.*, 45 Cal. 4th 1008 (2009), to contend that Plaintiffs' refusal to remove the wall and trees was at most a negligent omission that could be considered accidental. *See* ECF No. 16 at 7-8. *State of California* is distinguishable because that case considers situations where injuries resulted from a negligent decision combined with an unexpected cause. In *State of California*, the insured decided not to follow a suggested precaution to cover evaporation ponds at a hazardous waste disposal site with an impermeable cap. Then, an unexpected event in the form of "extraordinarily heavy rains," which led to a declaration of a state of emergency by both the Governor and the President, caused the ponds to overflow, resulting in waste discharge. The California Supreme Court held that the omission, not using an

12

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  impermeable cap, was only negligent and therefore the waste discharge resulting from the

2  extraordinary rain storm were unexpected and covered by the insurance policy. 45 Cal. 4th at 1028.

3  Quoting *Shell Oil*, the Court stated "[e]vidence the State should have known flooding was likely,

4  and should have taken additional measures against it, is insufficient to prove, as an undisputed fact,

5  that a waste discharge due to flooding was expected and therefore nonaccidental." *Id.* at 1028

6  (internal quotation marks omitted). In the instant case, Plaintiffs' refusal to maintain their property

7  led directly to the Kennedys' injury in the form of the Kennedys' continued annoyance and

8  discomfort regarding the wall and trees. In other words, there is no unexpected contributing cause

9  between the Plaintiffs' decision not to address the Kennedys' concerns and the resulting injury.

10  Moreover, as discussed above, the Plaintiffs were subjectively aware that the wall was causing

11  distress and annoyance to the Kennedys, which further distinguishes this case from *State of*

12  *California* where the insured had no actual knowledge of the potential injury, the waste discharge.

13      In sum, the allegations in Plaintiffs' complaint suggest that Plaintiffs had intentionally

14  decided not to respond to the Kennedys' concerns. This caused the Kennedys annoyance and

15  distress, about which the Kennedys made Plaintiffs aware. Accordingly, Plaintiffs cannot contend

16  that the insurance policy, which covers accidents, should cover Plaintiffs from the nuisance that

17  Plaintiffs ultimately caused the Kennedys.

18        **3.    Conclusion**

19      Plaintiffs' complaint establishes that conduct in the underlying complaint was expected and

20  not accidental. This is dispositive of Plaintiffs' breach of contract theory for failure to defend.

21  Defendant is not required to defend Plaintiffs with respect to the underlying litigation where no

22  possibility of coverage exists. There is no need for the Court to determine whether the underlying

23  complaint and extrinsic facts satisfied the insurance policy's requirements that "bodily injury" or

24  "property damage" result before coverage can be triggered. Because the Court concludes that

25  Plaintiffs have not alleged facts that state a claim with respect to Defendant's duty to defend, the

26  Court necessarily concludes that Plaintiffs have failed to allege facts necessary to state a claim for

27  bad faith breach of contract. *Horsemen's Benevolent & Protective Assn. v. Insurance Co. of North*

28  *America*, 222 Cal. App. 3d 816, 822 (1990). Therefore, the Court need not reach Defendant's

13

United States District Court
For the Northern District of California

request to strike Plaintiffs' punitive damages request. Accordingly, all claims alleging breach of contract or the implied covenant of good faith and fair dealing stemming from Defendant's failure to defend are dismissed.

### B.     Failure to Investigate Claims

Plaintiffs also allege that Defendant was required to conduct a more thorough investigation to discover facts in support of Defendant's duty to defend. Specifically, Plaintiffs allege that Defendant should have inquired to determine that Plaintiffs "in good faith disagreed with Kennedys' objections and demands regarding the wall and trees." *See* ECF No. 16 at 7. Plaintiffs' complaint fails to state a claim for failure to investigate for two reasons. First, Defendant satisfied its obligation to investigate Plaintiffs' claim by comparing the policy with the underlying complaint by the Kennedys and taking into account all extrinsic facts provided by Plaintiffs. Under California law, the duty of the insurer is fully discharged by review of the underlying complaint and the insurance policy. *See Am. Int'l Bank v. Fidelity and Deposit Co.*, 49 Cal. App. 4th 1558, 1571 (1996). Contrary to Plaintiffs' suggestion, Defendant was not required to inspect the site, speak to the Kennedys, or discuss the claim in depth before Defendant made a determination regarding its duty to defend. So long as the allegations of the underlying complaint, terms of the policy, and extrinsic facts known to Defendant did not "raise a single issue which could bring [the events] within the policy coverage," Defendant was relieved of its duty to defend. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 n.15 (1966). Here, as discussed above, based on the allegations in the instant complaint, nothing alleged in the underlying complaint or extrinsic facts known to the Defendant, in light of the insurance policy, suggested that Plaintiffs should be covered. Second, as discussed above, Plaintiffs' disagreement with the Kennedys regarding the condition of the wall and trees does not make the Kennedys' nuisance injury unexpected and therefore covered by the policy.

Importantly, there is no duty to defend a lawsuit which raises no potential liability, and there is no continuing duty on the insurer to investigate potential coverage once it has refused to defend the lawsuit on the basis of the third-party complaint and extrinsic facts known to it at time of tender. *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995). There was no reason

14

for Defendant to suspect that either the condition of the retaining wall and trees or Plaintiffs' refusal to replace them leading to the Kennedys' annoyance and discomfort constituted accidents triggering Defendant's duty to defend. Furthermore, Defendant's denial of defense provided Plaintiffs with the opportunity to supply additional information or considerations should Plaintiffs disagree with the decision. *See* ECF No. 2, Ex. C. Plaintiffs have not alleged that they provided any additional facts supporting coverage. Accordingly, Plaintiffs have not adequately alleged breach of contract on a failure to investigate theory.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss. The Court grants Plaintiffs leave to amend because Plaintiffs could allege additional facts about which Defendant was aware that could trigger the duty to defend or duty to investigate. Accordingly, amendment would not necessarily be futile. Further, there is no evidence of undue delay, bad faith or dilatory motive in the record, and Plaintiffs have not previously failed to cure deficiencies. Should Plaintiffs elect to file an Amended Complaint curing the deficiencies identified herein, they shall do so within 21 days of the date of this Order. Failure to meet the 21-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: June 6, 2014

LUCY H. KOH
United States District Judge

Case No.:  14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND