UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNY K. DANIELS and MARK M. DANIELS,<br><br>            Plaintiffs,<br>      v.<br><br>ALLSTATE INSURANCE COMPANY, an Illinois corporation, and DOES 1 through 25, inclusive,<br><br>            Defendants. | Case No.: 14-CV-00824-LHK<br><br>ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND |

Plaintiffs Jenny and Mark Daniels ("Plaintiffs") initiated this litigation against their insurer, Allstate Insurance Company ("Defendant"), for breach of insurance contract and breach of the implied covenant of good faith and fair dealing. *See* ECF No. 2. Plaintiffs claim that Defendant had a duty to defend them in underlying litigation brought in Santa Cruz County Superior Court. *See* ECF No. 25.

After the Court granted Defendant's Motion to Dismiss with leave to amend, *see* ECF No. 23, Plaintiffs filed a first amended complaint, *see* ECF No. 25. Defendant again filed a Motion to Dismiss, arguing once more that no potential for coverage existed under the insurance policy as a matter of law. *See* ECF No. 26. Plaintiffs have filed an Opposition, *see* ECF No. 30, and Defendant has filed a Reply, *see* ECF No. 31.

The Court finds this motion suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and hereby VACATES the hearing and the Case Management Conference set for October 9, 2014, at 1:30 p.m.

Having considered the briefing, the record in this case, and applicable law, the Court GRANTS Defendant's Motion to Dismiss without leave to amend for the reasons stated below.

## I. BACKGROUND

### A. The Insurance Policy

Plaintiffs purchased a homeowner's insurance policy (the "Policy") from Defendant in September 2012. The Policy was renewed effective September 2013 and remains in force. ECF No. 25 ¶ 6. Under the Policy, Defendant agrees to indemnify and defend Plaintiffs for damages as follows:

> Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

ECF No. 8 at 2. The Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." ECF No. 2, Ex. A to Pls.' Compl. ("Allstate Policy") at 3.

### B. The Underlying Litigation

The instant case arises out of a Santa Cruz County Superior Court lawsuit filed against Plaintiffs by their neighbors, Joyce and Edward Kennedy (the "Kennedys"). The Kennedys and Plaintiffs own adjacent property lots in Santa Cruz, California. Both lots sit on a south-facing hillside, with the Kennedys' property situated below that of the Plaintiffs. ECF No. 2, Ex. B to Pls.' Compl. ("Kennedys' Compl.") ¶ 9. The underlying dispute centered on the replacement of a twenty-year-old, man-made wooden retaining wall located on Plaintiffs' property along the boundary line shared with the Kennedys. *Id.* ¶ 8. The retaining wall, which was built by a previous owner of Plaintiffs' property, supports large amounts of fill soil that keep Plaintiffs' backyard level. *Id.* ¶ 11. In addition, two large fir trees, one located at the east end of the retaining

wall ("Tree 1") and the other about five feet upslope from the wall's center ("Tree 2"), have root systems embedded in the fill soil. *Id.* ¶¶ 12-15.

From their own property, the Kennedys noticed that Plaintiffs' retaining wall was collapsing in various places. The Kennedys' observation prompted them to hire geotechnical engineers and an arborist to examine the condition of the wall and trees. Kennedys' Compl. ¶ 10. The experts' reports confirmed that the wall was severely distressed and posed a threat of collapsing from "poor construction, age and/or damage caused by tree roots." *Id.* ¶ 11. The wall's failure would probably result in a landslide, causing the fill soil from Plaintiffs' property to inundate the Kennedys' property below. *Id.* ¶¶ 12, 20. In addition to the tree roots aggravating the threat of the wall's collapse, there was also some risk that the trees would fall onto the Kennedys' property should the wall fail and release the fill soil supporting the trees. *Id.* ¶¶ 17, 20.

From May to October 2012, the Kennedys repeatedly expressed their concerns to Plaintiffs. ECF No. 8-2, Ex. A at 3. The Kennedys made multiple visits and requests to Plaintiffs to replace the wall and remove the trees, and even suggested alternative dispute resolution. *Id.* The Kennedys also sent Plaintiffs a copy of the arborist's report, which detailed the dangers posed by the trees. Kennedys' Compl. ¶ 18. Despite having knowledge of the condition of the wall and trees and the distress these hazards caused the Kennedys, Plaintiffs refused to take any corrective action. *Id.*

Unable to resolve the issue with Plaintiffs directly, the Kennedys filed suit against Plaintiffs on February 15, 2013, in Santa Cruz County Superior Court, seeking declaratory and injunctive relief as well as damages. The Kennedys' complaint alleged that the wall and trees on Plaintiffs' property constituted a private nuisance. Kennedys' Compl. ¶ 20. The complaint further alleged that Plaintiffs had "acted unreasonably by failing to take action to remedy these hazards." *Id.* ¶ 21.

The Superior Court held a three-day bench trial starting on October 15, 2013. ECF No. 8-2, Ex. A at 2. At trial, Plaintiffs conceded that the retaining wall needed to be replaced and that Tree 1 needed to be removed. *Id.* at 4. Plaintiffs also testified that they did not appreciate the manner in which the Kennedys had approached them and, thus, "decided not to do anything in response" to their neighbors' requests to repair the wall and remove the trees. *Id.* at 3.

3

Case No.: 14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND

On November 8, 2013, the Superior Court ruled in favor of the Kennedys, declaring the retaining wall and trees to be nuisances. *Id.* at 8-10. Plaintiffs were ordered to replace the wall and remove the trees and to pay $8,000 in monetary damages to the Kennedys for discomfort and annoyance. *Id.*

### C. The Insurance Dispute and This Litigation

In February or March 2013, Plaintiffs tendered defense of the underlying litigation to Defendant. Defendant denied coverage in a response letter dated March 22, 2013. *See* ECF No. 2, Ex. C to Pls.' Compl. ("Allstate Letter"). In the letter, Defendant stated that the Policy did not cover the allegations of the underlying complaint because it only covered "accidents" resulting in "bodily injury" or "property damage," and that the Policy excluded coverage for damage to property owned or used by an insured. *See id.* at 2. Defendant gave Plaintiffs the opportunity to provide additional information or considerations if they believed Defendant had unfairly or erroneously denied coverage. *See id.* at 6. Plaintiffs have not alleged that they supplied additional information to Defendant.

Rather, on January 16, 2014, Plaintiffs brought the instant litigation in Santa Cruz County Superior Court against Defendant for breach of written contract and breach of implied covenant of good faith and fair dealing, seeking compensatory and punitive damages, prejudgment interest, and attorney's fees. *See* ECF No. 1 ¶¶ 1-2. Attached to the complaint were the Policy, the Kennedys' complaint in the underlying litigation, and Defendant's letter denying coverage. *See* ECF No. 2. Defendant removed the action to this Court on February 24, 2014. *See id.*

On March 3, 2014, Defendant filed a Motion to Dismiss. *See* ECF No. 8. The Court granted the motion with leave to amend on June 5, 2014, ruling that "Plaintiffs have not alleged facts that state a claim with respect to Defendant's duty to defend." ECF No. 23 at 13. The Court so held because the "conduct in the underlying complaint"—to wit, the failing condition of the retaining wall and trees and Plaintiffs' refusal to remove either—was "expected," "intentional," and "not accidental." *Id.* at 11, 13. "Defendant," the Court concluded, "is not required to defend Plaintiffs with respect to the underlying litigation where no possibility of coverage exists." *Id.* at 13. The Court also rejected Plaintiffs' failure to investigate claim because "there is no continuing

4

duty on the insurer to investigate potential coverage once it has refused to defend the lawsuit on the basis of the third-party complaint and extrinsic facts known to it at [the] time of tender." *Id.* at 14.

On June 26, 2014, Plaintiffs filed a first amended complaint ("FAC"), adding six new substantive paragraphs to their original allegations. ECF No. 25. In response, Defendant filed the instant Motion to Dismiss and Motion to Strike Plaintiffs' request for punitive damages on July 14, 2014. ECF No. 26. Plaintiffs filed their Opposition on July 28, 2014. ECF No. 30. Defendant filed a Reply on August 4, 2014. ECF No. 31.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks omitted).

### B.      Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipsis in original) (internal quotation marks omitted). Nevertheless, the Court may deny leave to amend because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III.    DISCUSSION

Plaintiffs allege breach of written contract and breach of the implied warranty of good faith and fair dealing. In particular, Plaintiffs allege that Defendant breached the contract and the implied warranty of good faith and fair dealing by: (1) failing to defend Plaintiffs in the underlying litigation brought by the Kennedys despite a duty to do so; and (2) failing to adequately investigate the underlying litigation prior to the denial of defense and indemnification. Plaintiffs also seek punitive damages on grounds that Defendant's breach of contract was willful, malicious, and in conscious disregard of Plaintiffs' rights.

As in its prior order granting Defendant's Motion to Dismiss, *see* ECF No. 23, the Court addresses the failure to defend and the failure to investigate claims separately. Because Plaintiffs

6

Case No.:   14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND

1   have not adequately alleged either set of claims, the Court once again grants Defendant's motion,
2   this time without leave to amend.

### A.      Failure to Defend Claims

Under California law, an insurer has a broad duty to defend insured entities against claims that create a potential for indemnity. *See Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993). The duty to defend is broader than the duty to indemnify, *see Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993), but it is not unlimited, *see Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995). In determining whether there is a duty to defend, the Court must look to the complaint in the underlying litigation and "*all* facts known to the insurer from any source." *Montrose Chem.*, 6 Cal. 4th at 300. The critical question, then, is whether the facts known to the insurer at the time it refused to defend the underlying lawsuit created any potential for coverage under the insurance policy. *See Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995). If there was no potential for coverage based on the underlying complaint and extrinsic facts made known to the insurer, then the insurer has not breached the insurance contract by refusing to defend. *See Montrose Chem.*, 6 Cal. 4th at 295.

Here, the Policy states that an "occurrence" is an "accident, including continuous or repeated exposure to substantially the same general conditions during the policy period, resulting in bodily injury or property damage." Allstate Policy at 3. Although the Policy does not further define accident, it is settled under California law that an "accident" for insurance coverage purposes must be "an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553, 559 (1970) (quoting *Geddes & Smith, Inc. v. Saint Paul-Mercury Indem. Co.*, 51 Cal. 2d 558, 563-64 (1959)). Furthermore, the Policy expressly allows gradual events to be considered accidental. The events at issue need not happen instantaneously.

For Defendant to have found the potential for coverage under the Policy as an "occurrence," there must have been some "accident" based on the underlying claim and extrinsic facts known to Defendant at the time of tender. In its June 5 order, the Court found no such possibility of coverage because the failing condition of the retaining wall and trees as well as

7
Case No.:  14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND

1    Plaintiffs' refusal to replace the wall and remove the trees in response to the Kennedys' concerns
2    were not accidental—these events were either expected or intentional. *See* ECF No. 23 at 6-14. To
3    survive the latest Motion to Dismiss, therefore, Plaintiffs must allege new facts, known to
4    Defendant at the time of tender, suggesting that either event could have been accidental. Having
5    reviewed Plaintiffs' FAC, which includes six new substantive paragraphs,[1] the Court concludes
6    that no such facts have been alleged.

7    As relevant here, paragraphs 9 and 11 allege that Plaintiffs were not aware of the risks
8    posed by the retaining wall or trees until May 2012, when the Kennedys first approached Plaintiffs
9    about the problems. ECF No. 25 ¶¶ 9, 11. Indeed, Plaintiffs allege that they did not even know the
10   retaining wall existed until the Kennedys raised the issue. *Id.* ¶ 9. But whether Plaintiffs were
11   unaware of the problems before May 2012 is of no moment. Assuming this allegation's truth, it
12   does not change the fact that deterioration of a twenty-year-old wooden wall or hillside tree is an
13   expected and foreseeable outcome. Nor does it change the fact that for nine months Plaintiffs
14   intentionally chose not to take any remedial action, despite repeated requests from the Kennedys
15   for Plaintiffs to replace the wall and remove Tree 2. It was precisely Plaintiffs' failure to take such
16   corrective action that prompted the Kennedys to file suit in February 2013. *See* Kennedys' Compl.
17   ¶ 18 (alleging that Plaintiffs "refused to take any action to remedy the man-made and natural
18   hazards on their property"); *id.* ¶ 21 (bringing a private nuisance action because Plaintiffs "acted
19   unreasonably by failing to take action to remedy these hazards").

20   Whether Plaintiffs considered themselves justified in failing to take any remedial action is
21   equally immaterial. It matters not that Plaintiffs may have thought Defendant would investigate
22   further, ECF No. 25 ¶ 12; that Plaintiffs may have disagreed with the methods of the Kennedys'
23   arborist, *id.* ¶ 13; or that Plaintiffs may have felt the Kennedys' demands were unreasonable, *id.*
24   ¶ 16. None of these allegations shows that the conduct giving rise to the underlying litigation—i.e.,
25   Plaintiffs' refusal to remedy the deterioration of their property—was in any way accidental.

26   In their Opposition, Plaintiffs acknowledge that "the only issue is whether the Kennedys'
27   claims against [them] constitute an 'accident' in the sense that they were unexpected or

---

[1] These are paragraphs 9-13 and 16 of the FAC. *See* ECF No. 25 ¶¶ 9-13, 16.

unintended." ECF No. 30 at 4. Plaintiffs acknowledge further that Defendant owes "no duty to defend under the policy until suit is filed." *Id.* at 4 n.2. Nevertheless, Plaintiffs contend that coverage was "established" in May 2012, when the Kennedys first made their request and Plaintiffs notified Defendant of the issue. *Id*. at 4. The duty to defend was triggered, Plaintiffs argue, because Defendant could not eliminate the possibility of coverage under the policy as of May 2012. *Id.* at 4-5.

Plaintiffs are mistaken. Nothing in the Kennedys' complaint was predicated on Plaintiffs' lack of knowledge of the wall's deterioration prior to May 2012. Instead, it was based on Plaintiffs' refusal to take corrective action in response to an expected, natural event of which they had been notified. *See* Kennedys' Compl. ¶¶ 18, 21, 28. Because the Kennedys' claims arose out of expected or intentional conduct, Defendant properly determined that there was no potential for coverage under the Policy.[2] *See State Farm Gen. Ins. Co. v. Frake*, 197 Cal. App. 4th 568, 581 (2011) ("The mere fact that [Plaintiffs] did not intend to injure [the Kennedys] does not transform [their] intentional conduct into an accident.").

Plaintiffs' citations to *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993), and *Shell Oil Co. v. Winterthur Swiss Insurance Co.*, 12 Cal. App. 4th 715 (1993), remain inapposite for the same reasons detailed in the Court's June 5 order. As stated previously, nothing in the underlying complaint in *Montrose Chemical* or the extrinsic evidence known to the insurer "establish that [the insured] expected or intended the property damage that allegedly resulted." 6 Cal. 4th at 304. Here, by contrast, the underlying complaint explicitly stated that the Kennedys had informed Plaintiffs of the injury and the threat of damage that resulted therefrom. *See* Kennedys' Compl. ¶ 18. What's more, *Shell Oil*'s holding that "[t]he plain meaning of 'expected' does not include 'should have known'" provides Plaintiffs no refuge. 12 Cal. App. 4th at 746. The facts, as

---

[2] Plaintiffs' falling tree hypothetical is unavailing for similar reasons. *See* ECF No. 30 at 8. In the situation Plaintiffs imagine—i.e., where Tree 2 unexpectedly fell on the Kennedys' roof in May 2012, before Plaintiffs had been made aware of the risk it posed—they might well have a claim against Defendant. But that is not what happened here. A more apt comparison would be if Tree 2 had suddenly fallen on the Kennedys' roof in February 2013, nine months after they had notified Plaintiffs of its deterioration, and yet despite the neighbors' repeated pleas Plaintiffs had done nothing in the interim to remedy the danger. In such a case, as here, Defendant would owe Plaintiffs no duty to defend.

9

Case No.: 14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND

Plaintiffs allege, indicate that they were *subjectively* aware of the injury to the Kennedys caused by their refusal to replace the wall and remove the trees—viz., the Kennedys' discomfort and inability to enjoy their property. Whether Plaintiffs "should have known" of the gradual deterioration is irrelevant when they actually knew that the state of their property was upsetting to the Kennedys and that their inaction was "substantially certain" to result in the Kennedys' continued distress. *Id.* at 748; *see also id.* at 751 ("[W]here damage is the direct and immediate result of an intended or expected event, there is no accident.").

In sum, Plaintiffs' FAC alleges no new facts suggesting that the conduct giving rise to the underlying complaint was somehow accidental. As Defendant is not required to defend Plaintiffs with respect to the underlying litigation where no possibility of coverage exists, there was no breach of contract for failure to defend.[3] All claims alleging breach of contract or of the implied covenant of good faith and fair dealing stemming from Defendant's failure to defend are hereby dismissed.

### B. Failure to Investigate Claims

Plaintiffs also allege that Defendant was required to conduct a more thorough investigation to discover facts in support of Defendant's duty to defend. Paragraph 12 of the FAC states that Plaintiffs contacted one of Defendant's insurance agents within a reasonable period of time after the Kennedys' May 2012 visit. ECF No. 25 ¶ 12. In addition, Plaintiffs allege that they explained the situation to one of Defendant's insurance adjusters, who had contacted Plaintiffs following their initial reporting of the claim. *Id.* According to Plaintiffs, Defendant took no further action to investigate the matter. *Id.*

Plaintiffs' FAC does not state a claim for failure to investigate. Defendant satisfied its obligation to investigate Plaintiffs' claim by comparing the terms of the Policy with the underlying complaint filed by the Kennedys, taking into account all extrinsic facts provided by Plaintiffs. Under California law, the duty of the insurer is fully discharged by review of the underlying

---

[3] The Court need not determine whether the underlying complaint and extrinsic facts satisfy the Policy's requirement that "bodily injury" or "property damage" have occurred. Nor must the Court reach Defendant's plea to strike Plaintiffs' request for punitive damages. *See* ECF No. 23 at 13-14.

10

Case No.: 14-CV-00824-LHK
ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND

complaint and the insurance policy. *See Horace Mann*, 4 Cal. 4th at 1081 ("The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy."); *Baroco W., Inc. v. Scottsdale Ins. Co.*, 110 Cal. App. 4th 96, 103 (2003) ("After receiving a tender of defense, the insurer satisfies its duty to investigate by considering the complaint and the terms of the policy.  Although extrinsic facts may also give rise to a duty to defend, such facts must be known at the time of tender and must reveal a potential for liability." (footnote omitted)).  Contrary to Plaintiffs' suggestion, *see* ECF No. 30 at 8-10, Defendant was not required to inspect the site, speak to the Kennedys, or discuss the claim in depth before making a determination regarding its duty to defend.  So long as the allegations in the Kennedys' complaint, the terms of the Policy, and extrinsic facts known to Defendant at the time did not "raise a single issue which could bring [the events] within the policy coverage," Defendant was relieved of its duty to defend. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 n.15 (1966).  Such was the case here.

Moreover, there is no "continuing duty" on the insurer to investigate potential coverage once it has refused to defend the lawsuit on the basis of the underlying complaint and extrinsic facts known to it at the time of tender. *Gunderson*, 37 Cal. App. 4th at 1114.  At the time the Kennedys filed their complaint, there was no reason for Defendant to suspect that either the condition of the retaining wall and trees or Plaintiffs' refusal to replace them constituted accidents triggering Defendant's duty to defend.  Furthermore, Defendant's denial letter gave Plaintiffs the opportunity to supply additional information or considerations should they disagree with the decision. *See* Allstate Letter at 6.  Plaintiffs' FAC does not allege that they provided Defendant any additional facts supporting coverage.  Accordingly, Plaintiffs have not adequately alleged breach of contract on a failure to investigate theory.

IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss without leave to amend.  Plaintiffs were already afforded an opportunity to allege additional facts about which Defendant was aware that could trigger the duty to defend or the duty to investigate.  They have not.  As a result, the Court finds that further amendment would be futile. *See Allen v. City of*

*Beverly Hills*, 911 F.2d 367, 373-74 (9th Cir. 1990) (affirming district court's dismissal and denying plaintiff leave to amend where "any further amendment to the complaint would likely prove futile").

The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: October 1, 2014

LUCY H. KOH
United States District Judge